IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLARA MAASS MEDICAL CENTER,<br>One Clara Maass Drive<br>Belleville, NJ 07109;<br><br>MONMOUTH MEDICAL CENTER, INC.<br>300 Second Avenue<br>Long Branch, NJ 07740;<br><br>NEWARK BETH ISRAEL MEDICAL CENTER, INC.<br>201 Lyons Avenue at Osborne Terrace<br>Newark, NJ 07112;<br><br>SAINT BARNABAS MEDICAL CENTER<br>94 Old Short Hills Road<br>Livingston, NJ 07039,<br><br>    Plaintiffs,<br><br>  v.<br><br>MICHAEL O. LEAVITT, Secretary,<br>Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>    Defendant. | Case No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND SUMS DUE UNDER THE MEDICARE ACT**

Plaintiffs, by and through their undersigned attorneys, bring this action against Defendant, MICHAEL O. LEAVITT, in his official capacity as the Secretary of the United States Department of Health and Human Services, and state as follows:

## NATURE OF THE CLAIM

1. Plaintiffs bring this action seeking reimbursement from the federal Medicare Program for the reasonable costs of outpatient hospital services they provided to Medicare beneficiaries in the fiscal year ending ("FYE") December 31, 2000. Defendant, the Secretary of Health and Human Services ("Secretary"), has refused to make Medicare payments to the Plaintiffs for certain outpatient department services in accordance with statutory requirements applicable to these payments. The reimbursement limitation is based upon the Defendant's application of the blended amount methodology. However, Congress mandated by statute that the blended amount methodology would not apply to services furnished on or after January 1, 1999. In fact, the Defendant did not stop using this unlawful methodology until the implementation of the new reimbursement system for outpatient services on August 1, 2000.

2. Plaintiffs, therefore, seek an order declaring the Defendant's application of the blended amount methodology after December 31, 1998 to be unlawful and compelling the Defendant to reimburse the Plaintiffs for the difference between the reasonable costs incurred in providing these services and the lower blended amounts that were actually paid to the Plaintiffs for these services. In addition, the Plaintiffs seek interest on that sum as calculated in accordance with 42 U.S.C. § 1395oo(f).

## JURISDICTION AND VENUE

3. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. (the "Medicare Act") and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.

4. This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

5. Venue lies in this judicial district under 42 U.S.C. § 1395oo(f).

2

## PARTIES

6. Plaintiffs are non-profit, acute care hospitals located in the State of New Jersey. Plaintiffs were certified to, and did, participate in the Medicare Program during the fiscal year listed below:

    (a) Clara Maass Medical Center, Medicare provider number 31-0009 ("Clara Maass"), fiscal year ending December 31, 2000.

    (b) Monmouth Medical Center, Inc., Medicare provider number 31-0075 ("Monmouth"), fiscal year ending December 31, 2000.

    (c) Newark Beth Israel Medical Center, Inc., Medicare provider number 31-0002 ("Newark Beth"), fiscal year ending December 31, 2000.

    (d) Saint Barnabas Medical Center, Medicare provider number 31-0076 ("Saint Barnabas"), fiscal year ending December 31, 2000.

7. In addition, the Plaintiffs together participated in a group appeal before the Provider Reimbursement Review Board ("PRRB") (PRRB Case No. 04-1013G), challenging the application of the blended amount methodology to their Medicare payments for certain outpatient department services during the fiscal year ending December 31, 2000. Pursuant to 42 U.S.C. § 1395oo(f), the PRRB granted the Plaintiffs' petition for expedited judicial review ("EJR") on February 27, 2008. Thus, the Plaintiffs bring this action for judicial review of the Defendant's application of the blended amount methodology to their Medicare payments for certain outpatient department services during the fiscal year ending December 31, 2000.

8. Michael O. Leavitt is the Secretary of the Department of Health and Human Services ("HHS"), the federal department that contains the Centers for Medicare & Medicaid

Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare Program.

## STATUTORY AND REGULATORY BACKGROUND

**A.     The Medicare Program and Payment for Hospital Outpatient Services**

9.     The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Pursuant to 42 U.S.C. § 1395cc, Plaintiffs entered into written agreements with the Secretary to provide hospital services to eligible Medicare beneficiaries.

10.    In the Social Security Amendments of 1965, Pub. L. No. 89-97, § 102(a), 79 Stat. 291, Congress enacted Title XVIII of the Social Security Act, also known as the Medicare Act, to provide for two separate insurance programs for the aged and disabled. One of these insurance programs, Part A of the Medicare Act, 42 U.S.C. §§ 1395c–1395i-5, provides for Hospital Insurance Benefits that cover institutional services furnished to Medicare beneficiaries by participating "providers of services," or "providers." See 42 U.S.C. §§ 1395d(a)(1), 1395x(u). The other insurance program, Part B of the Medicare Act, 42 U.S.C. §§ 1395j–1395w-4, provides benefits for certain other services, including outpatient services furnished to Medicare beneficiaries.

11.    Part B of the Medicare Act entitles a Medicare beneficiary to have payment made on the beneficiary's behalf for covered "outpatient hospital services" furnished by a provider, including participating hospitals such as Plaintiffs. 42 U.S.C. § 1395k.

12.    The issue in this case concerns the payments owed to the Plaintiffs for outpatient hospital services covered under Part B.

4

13.     The Secretary contracts with private organizations to perform certain audit, administrative, and payment functions with respect to providers under the Medicare Program. These agents of the Secretary are referred to as "fiscal intermediaries" or "intermediaries." See 42 U.S.C. §§ 1395h, 1395kk-1.

B.     **Medicare Reasonable Cost Reimbursement for Hospital Outpatient Services**

14.     When first enacted, the Medicare Program reimbursed hospitals for the reasonable costs of all covered inpatient and outpatient services provided to Medicare beneficiaries. See Social Security Amendments of 1965, Pub. L. No. 89-97, § 102(a), 79 Stat. 291 (enacting Social Security Act §§ 1841(b), 1833(b)(2)(A)).

15.     The reasonable cost reimbursement system still governs Medicare payment for services provided by hospitals, except where Congress has authorized payment on another basis.

16.     The term "reasonable cost" is defined to "be the cost actually incurred . . . in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v).

17.     The Social Security Act includes a prohibition on cross-subsidization that directs the Secretary to make certain that "the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this title will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs." See 42 U.S.C. § 1395x(v)(1)(A)(i).

18.     Courts have consistently enforced the statutory prohibition on cross-subsidization by prohibiting Medicare policies that deny payment to providers for the reasonable cost of services provided to Medicare beneficiaries unless there is an explicit statutory provision for payment of less than reasonable cost. See, e.g., St. Mary of Nazareth Hosp. Ctr. v. Heckler, 760 F.2d 1311, 1315 (D.C. Cir. 1985).

19. The statutory definition of "reasonable cost" includes some express limitations on the amounts considered reasonable. During the fiscal year at issue, the statute directed the Secretary to reduce payments for all capital-related costs of outpatient services by 10% and for the Secretary to reduce the reasonable cost of outpatient hospital services by 5.8%. 42 U.S.C. § 1395x(v)(1)(S)(ii)(I), (II).

20. These two reduction factors (10% for capital-related costs and 5.8% for operating costs) were extended by Congress in 1997 and 1999 to remain in effect until the implementation of a prospective payment system for hospital outpatient services on August 1, 2000. See Balanced Budget Act ("BBA") of 1997, Pub. L. No. 105-33, 111 Stat. 444 § 4522; Balanced Budget Refinement Act ("BBRA") of 1999, Pub. L. No. 106-113, 113 Stat. 1501A-341 § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I), (II)).

C. **The Blended Payment Rate Limits for Certain Hospital Outpatient Services**

21. Congress several times has revised the statutory provision regarding Part B payments to allow payment of less than the reasonable cost of certain hospital outpatient services.

22. Section 1833(i)(1) of the Social Security Act, 42 U.S.C. § 1395*l*(i)(1), authorized the Secretary to identify certain services that may appropriately be performed in the inpatient department of a hospital, but which also can be performed safely on an ambulatory basis or in a hospital outpatient department.

23. Section 1833(i)(3)(A) of the Social Security Act, 42 U.S.C. § 1395*l*(i)(3)(A), sets forth a limitation on the payment amount for these hospital outpatient department services. This limitation mandates that the Medicare payment rate for the specified services in an outpatient department setting is to be the lower of the outpatient department's reasonable cost rate or a

6

"blend amount," which is 42 percent of the reasonable cost rate and 58 percent of the ambulatory surgery center ("ASC") fee schedule rate.

24. Because the ASC rate for these services is typically lower than the reasonable cost rate for outpatient department services, this provision essentially lowers the payment rate for the specified services.

25. Similarly, section 1833(n)(1) of the Social Security Act, 42 U.S.C. § 1395*l*(n)(1), sets out a blended amount methodology for hospital outpatient radiology and other diagnostic procedures.

26. Medicare regulations set forth at 42 C.F.R. §§ 413.118 and 413.122 pertain to the blended amount rate limits.

27. Absent the invalid blended amount provisions set forth in these regulations, and before implementation of the new prospective payment system for outpatient services ("OPPS"), these services would be paid for by Medicare at the reasonable cost rate otherwise required for outpatient department services.

### D. The Prospective Payment System for Hospital Outpatient Services and Congressional Termination of the Blended Payment Rates

28. Congress directed the Secretary to implement OPPS beginning with services provided in 1999. See BBA of 1997, Pub. L. No. 105-33 § 4523(a).

29. The BBA extended the two reduction factors (10% for capital-related costs and 5.8% for operating costs) in the statutory definition of reasonable cost "through 1999 and during fiscal year 2000 before January 1, 2000." See BBA of 1997, Pub. L. No. 105-33 § 4522.

30. In section 4523(d) of the BBA of 1997, Congress mandated that the blended amount methodology set forth in § 1395*l*(i)(3) and § 1395*l*(n)(1) would not apply to services furnished on or after January 1, 1999. As a result, after January 1, 1999, it was contrary to law to

use this methodology to calculate payment amounts for the outpatient department services affected by these sections.

31.  The regulations controlling the blended amount rate limits at 42 C.F.R. §§ 413.188 and 413.122 remain in the Code of Federal Regulations, despite the fact that statutory authority for the blended amount methodology was terminated as of December 31, 1998.

32.  The Secretary issued a proposed rule regarding OPPS in 1998. See 63 Fed. Reg. 47,552 (Sept. 8, 1998).

33.  The Secretary gave notice that CMS would not implement OPPS before January 1, 2000 in the preamble to this proposed rulemaking. See id. at 47,554.

34.  In addition, in the preamble the Secretary noted that Congress had extended the two reduction factors (10% for capital-related costs and 5.8% for operating costs), however, the Secretary did not set forth how CMS would plan on paying for outpatient hospital services provided between January 1, 1999 and the implementation of OPPS. See id. at 47,554-55.

35.  Shortly after this proposed rulemaking, Congress further extended the two reduction factors (10% for capital-related costs and 5.8% for operating costs) beyond 1999. BBRA of 1999, Pub. L. No. 106-113 § 201(k).

36.  The BBRA amended the statute so that the two reduction factors (10% for capital-related costs and 5.8% for operating costs) would remain in effect "until the first date that the prospective payment system under section 1833(t) is implemented." BBRA of 1999, Pub. L. No. 106-113 § 201(k).

37.  The Secretary issued a final rule implementing OPPS in 2000. See 65 Fed. Reg. 18,434 (Apr. 7, 2000).

38.     In the final rule implementing OPPS, CMS required that the blended amount methodology would continue to apply to calculate hospital outpatient payments during the period from January 1, 1999 until the effective date of OPPS. See id. at 18,489-90.

39.     OPPS became effective on August 1, 2000. See 65 Fed. Reg. 40,535 (June 30, 2000).

### E.     Medicare Cost Report and Appeals Process

40.     The Secretary contracts with private organizations to perform certain audit, administrative, and payment functions with respect to providers under the Medicare Program. These agents of the Secretary are referred to as "fiscal intermediaries" or "intermediaries." See 42 U.S.C. §§ 1395h, 1395kk-1.

41.     At the close of a fiscal year, a provider must submit a "cost report" to its fiscal intermediary showing the costs incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R. §§ 413.24, 413.50. The intermediary is required to audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the provider of the final determination of the Medicare reimbursement due the provider for services furnished to Medicare beneficiaries for that cost reporting period. See 42 U.S.C. § 1395h; 42 U.S.C. § 1395oo(a)(1)(A)(i); 42 C.F.R. § 413.20; 42 C.F.R. § 405.1803(a)(1); Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 400-01 (1988).

42.     If a hospital is dissatisfied with its intermediary's final determination of total Medicare reimbursement for a cost reporting period, as reflected in the NPR, it is entitled to a hearing before the PRRB. See 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

43.     The PRRB is an administrative board made up of five members who are appointed by the Secretary. 42 U.S.C. § 1395oo(h). The PRRB must comply with all provisions of the statute and the Secretary's regulations. See 42 C.F.R. § 405.1867.

44. The EJR provisions permit providers who are entitled to and have requested a hearing before the PRRB to bypass the PRRB's hearing procedure and obtain judicial review of an issue involving a question of law or regulation, when the PRRB determines that it is does not have the authority to decide a question of law, regulation, or CMS ruling. See 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1842(b).

45. Judicial review shall be pursuant to the relevant provisions under the APA. See 42 U.S.C. § 1395oo(f).

46. Under the APA, the reviewing court may overturn agency action that exceeds an agency's statutory authority, is contrary to law, is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law. See 5 U.S.C. § 706.

## FACTS SPECIFIC TO THIS CASE

47. Plaintiffs are non-profit, acute care hospitals located in the State of New Jersey. Plaintiffs were certified to, and did, participate in the Medicare Program during the fiscal year at issue.

48. At issue is FYE December 31, 2000, which included a portion of the period beginning on January 1, 1999, when the blended amount methodology was terminated, and August 1, 2000, when OPPS became effective.

49. During the fiscal year at issue, each of the Plaintiffs filed a cost report with the Medicare fiscal intermediary.

50. Each cost report submitted by the Plaintiffs identified the reasonable cost of outpatient services furnished to Medicare beneficiaries and the blended amount methodology applicable to some of those services.

51. Clara Maass received a NPR dated October 1, 2003, for its fiscal year ending December 31, 2000.

52. Monmouth received a NPR dated October 3, 2003, for its fiscal year ending December 31, 2000.

53. Newark Beth received a NPR dated September 30, 2003, for its fiscal year ending December 31, 2000.

54. Saint Barnabas received a NPR dated September 19, 2003, for its fiscal year ending December 31, 2000.

55. The fiscal intermediary's final payment determination in the NPR for each Plaintiff applied the blended amount methodology to deny hospital reimbursement for the reasonable costs of outpatient services that exceeded the blended amount methodology limits.

56. Plaintiffs together appealed these final payment determinations in a group appeal before the PRRB (PRRB Case No. 04-1013G) challenging the application of the blended amount methodology to deny reimbursement for the reasonable costs of outpatient services as required by law.

57. On February 27, 2008, the PRRB granted the Plaintiffs' petition for EJR of the challenge of the application of the blended amount methodology during the fiscal year at issue.

## COUNT I

58. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59. The Secretary's application of the blended amount methodology to deny reimbursement for the full reasonable costs of outpatient services provided to Medicare beneficiaries on or after January 1, 1999 and before August 1, 2000, should be set aside pursuant

to 5 U.S.C. § 706 because it exceeds the Secretary's statutory authority, is contrary to law, and is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.

60.     The Secretary's application of the blended amount methodology to determine Medicare reimbursement for outpatient services provided to Medicare beneficiaries during the fiscal year at issue violates the Congressional directive in BBA § 4523 that the blended amount methodology shall not apply to services provided after December 31, 1998.

61.     Under 42 U.S.C. § 1395*l*(i)(3)(A), the Secretary had no statutory authority to use the blended amount methodology to calculate a payment rate for any outpatient service furnished on or after January 1, 1999.

62.     Even if the Secretary believed he had the authority to pay for hospital outpatient department services under the existing payment system after January 1, 1999, he must have done so in accordance with the statutory provisions relating to that system. However, by the terms of the blended amount methodology, as amended by section 4523(d)(1)(A) of the BBA, that section applies only to payments made before January 1, 1999. Therefore, any payments for services furnished after that date, but before implementation of OPPS, should have been based on the reasonable cost rules that apply generally to outpatient department services under the previously existing payment system.

63.     Congressional intent as expressed in the plain text of BBA § 4523(d) trumps the Secretary's perception of congressional purpose in connection with the Secretary's delay in implementing OPPS. See Natural Res. Def. Council v. U.S. Envtl. Prot. Agency, 805 F.2d 410 (D.C. Cir. 1986).

64. When an agency determines that a statute cannot be implemented as drafted, the agency "may deviate no further from the statute than is needed to protect congressional intent." Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

65. Statutory language is the key to determining Congressional intent and "when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." See Estate of Floyd Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992); see also Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999).

66. There is a strong presumption that the plain language of the statute controls, which cannot be rebutted by legislative history or a functional interpretation of the act as a whole. See, e.g., Ardestani v. Immigration & Naturalization Serv., 502 U.S. 129, 135-38 (1991); United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters") (internal quotations omitted). If "Congress has directly spoken to the precise question at issue . . . that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). As of January 1, 1999, the statutory authority for the blended amount methodology had clearly expired, and consequently, it was unlawful for the Secretary to continue to use it.

67. The clear intent of Congress was to terminate the blended amount methodology effective January 1, 1999, while continuing Medicare coverage for hospital outpatient services

provided after that date and also to ensure that Medicare pays for its share of those services without cross-subsidization.

68. The two reduction factors (10% for capital-related costs and 5.8% for operating costs) were extended by Congress twice in 1997 and 1999 to remain in effect until the delayed implementation of OPPS. See BBA of 1997 § 4522; BBRA of 1999 § 201(k).

69. The Secretary's application of the blended amount methodology to outpatient services provided on or after January 1, 1999 and before these services were designated by the Secretary for payment under OPPS is arbitrary and capricious because it is inconsistent with the agency's treatment of other services that were not designated for payment under the new system. The Secretary continues to reimburse hospitals on a reasonable cost basis for outpatient services that are not designated for payment under OPPS without explanation as to why the services at issue here are treated differently. The agency's inconsistent treatment of the services at issue, without rational explanation, is arbitrary and capricious. Transactive Corp. v. U.S., 91 F.3d 232, 237 (D.C. Cir. 1996).

70. The Secretary's application of the blended amount methodology to the outpatient services at issue violates the Plaintiffs due process rights as the Secretary did not give the hospitals fair advance notice as to how Medicare would reimburse for hospital outpatient services provided to Medicare beneficiaries from January 1, 1999 through August 1, 2000. See GranCare, Inc. v. Shalala, 93 F. Supp. 2d 24, 31-32 (D.D.C. 2000).

71. The application of the OPPS final rulemaking published on April 7, 2000 (65 Fed. Reg. at 18,489-90), to deny reimbursement for the reasonable cost of outpatient services previously provided to Medicare beneficiaries constitutes an impermissible, retroactive

application of a rule and is contrary to law. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204 (1988).

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request:

1. An order declaring invalid the Secretary's application of the blended amount methodology and his denial of Medicare reimbursement for the Plaintiffs' full reasonable costs of services to Medicare outpatients on or after January 1, 1999 and before August 1, 2000;

2. An Order requiring the Secretary to reimburse the Plaintiffs promptly for the full amounts of their reasonable costs of services provided to Medicare outpatients for the applicable portions of their FYE 2000 cost reporting periods before August 1, 2000, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2); and

3. Such other relief as the Court may consider appropriate.

DATED: April 25, 2008

Respectfully submitted,

_____
Eugene E. Elder
D.C. Bar No. 435921
John R. Jacob
D.C. Bar No. 444412
Elizabeth H. Goldman
D.C. Bar No. 481173

AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4149

Attorneys for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Clara Maass Medical Center, et al. | MICHAEL O. LEAVITT<br>Secretary, Department of Health and Human Services |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Eugene E. Elder<br>Akin Gump Strauss Hauer & Feld LLP<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>202.887.4149 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

● **C. Administrative Agency Review**
☒ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. Sec. 1395oo(f); action for judicial review under the Medicare Act

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND:  YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

DATE April 25, 2008   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.